H. GARLAND PAVY, Judge Pro Tem.
In February, 1984, Wagoner’s Stop-N-Go, Inc. granted a mortgage on realty to Wilson Oil Company, Inc. (hereinafter referred to as mortgagee) to secure payment of a promissory note in the sum of $63,624.72. The mortgage was duly recorded on February 10, 1984, in Vernon Parish. On November 2,1984, Central Oil Company (hereinafter referred to as judgment-creditor) recorded in the same parish a personal money judgment it had against Wagoner’s Stop-N-Go, Inc.
The property involved was sold and the proceeds are waiting distribution. The judgment-creditor brought a rule against the mortgagee to rank the liens by having its judicial mortgage ranked before the conventional one. After trial, the judge ruled from the bench in favor of the conventional mortgagee. He gave oral reasons. The judgment-creditor has appealed.
The appellant’s contention is that there was no consideration for the promissory note, the mortgage is ineffective and cannot outrank the later filed judicial mortgage. The appellee’s position is that the note was given in payment of a prior indebtedness.
Wagoner’s Stop-N-Go, Inc. operated a combination convenience store and gasoline filling station. It was purchasing its gasoline from the mortgagee which operated a bulk distributorship. By agreement, the retailer would check the meters on his gas pumps to determine the weekly amounts due.
For most of the period, Wagoner’s Stop-N-Go, Inc. made its payments by depositing funds into mortgagee’s accounts in various banks. According to mortgagee, towards the end of 1983 it noticed that the balance due by retailer was excessive. After calculation and negotiations, mortgagor and mortgagee agreed upon a balance for *798 which the note and mortgage were executed.
According to the judgment-creditor, there was no such balance due and the note and mortgage constitute a sham. It claimed the balance was much lower than that shown by the mortgagee’s own ledger sheet for mortgagor’s account.
The record is full of copies of deposit slips, bank charges for bad checks included in the deposits and the weekly reports of gas sold. No comprehensive analysis based on auditing principles is available. One of judgment-creditor’s witnesses was plaintiff’s office manager. She made calculations from reports of weekly gas-meter readings and from the deposit slips to mortgagee’s bank accounts. The gas-meter readings of gas sold totaled $316,-573.32. The total deposits to both of mortgagee’s bank accounts total $224,926.60. From these figures, the balance due would have been over $90,000. This does not include adjustments for bad checks among the deposits and the $9,000 note mortgagee supposedly paid for the mortgagor. Thus, even by judgment-creditor’s presentation, there was ample consideration for the mortgage note.
The president of mortgagee corporation and Mr. Kenny Wagoner, operator of Wagoner’s Stop-N-Go, Inc., both testified to the manner in which they arrived at a balance for which security was given. They took a previously struck balance. To this figure, they added totals of amounts due for gas sold during the period involved. From that amount, they deducted bad checks included in the deposits and a $9,000 note which mortgagor supposedly paid for mortgagee. From this figure they deducted deposits to mortgagee’s account during the period involved. The procedure was used once in December, 1983, and again in February, 1984, when the final balance was struck. Mortgagee put in evidence an adding machine tape showing these calculations. No calculations or documentary evidence is shown to make up the original struck balance. As noted, both mortgagee’s president and Mr. Kenny Wagoner, operator of the retail establishment, testified. Both men stated that the procedure used to determine the balance was correct.
A ledger sheet maintained by mortgagee on the retailer shows a balance of over $40,000. This does arouse some suspicion. Nevertheless, there are explanations. It is questionable whether all weekly reports for gas-meter readings were included. There could have been mistakes or in good faith or otherwise. In the face of the testimony by both Wilson and Wagoner and the figures presented by the judgment-creditor’s office manager and witness, we must conclude that the mortgage was genuine.
Accordingly, judgment is affirmed at appellant’s costs. AFFIRMED.